## IN THE COURT OF APPEALS OF IOWA

No. 15-1416
Filed March 23, 2016

**IN RE THE MATTER OF C.J.,**
**Alleged to be Seriously Mentally Impaired,**

**C.J.,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Duane Hoffmeyer, Judge.

Respondent appeals the district court order finding he was seriously mentally impaired. **REVERSED AND REMANDED.**

Zachary S. Hindman of Bikakis, Mayne, Arneson, Hindman & Hisey, Sioux City, for appellant.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Respondent C.J. appeals the district court order finding he was seriously mentally impaired. We find there is not clear and convincing evidence to show C.J. was a danger to himself or others due to insufficient evidence of a recent overt act. We also find there is insufficient evidence to show he was likely to inflict serious emotional injury on members of his family or others who lacked a reasonable opportunity to avoid contact with him if he was allowed to remain at liberty without treatment. We reverse the decision of the district court and remand for dismissal of the application.

### I.    Background Facts & Proceedings

On July 14, 2015, C.J. was taken to the emergency room at Mercy Medical Center in Sioux City, Iowa, by police officers. Dr. Brian Paugh, a physician, requested a forty-eight-hour hold, pursuant to Iowa Code section 229.22 (2015). Dr. Paugh stated:

> [Patient] has been exhibiting paranoid schizophrenia today. He has been exhibiting aggressive behavior toward SCPD [Sioux City Police Department] officers. I would like hold for evaluation & treatment.

The district court ordered C.J. should be immediately detained due to serious mental impairment.

On July 16, 2015, an application was filed alleging C.J. was seriously mentally impaired. An affidavit in support of the application was signed by Marlene Sorensen, a member of the hospital staff, who stated:

> [C.J.] was admitted to Mercy Behavioral Health on 7/14/15 from the ER. He had been hearing voices due to an implanted 2-way radio. He remains paranoid. States wants a full body scan to see the chips in his [right] ear and [left] eye. States this is the doing

of the FBI. States chips make him hear voices that know exactly what he is thinking.

An affidavit by Christine Strand, another member of the hospital staff, stated:

> [C.J.] was admitted to Mercy Behavioral through the Emergency Department due to delusional & paranoid behavior. He believes that he has had microchips put into parts of his body & is wanting body scans. He has been at Mercy before with similar delusions. He is refusing psychiatric medications. His delusions impact his decision-making resulting in him being in imminent danger to self & possibly others.

Dr. Josette Lindahl completed the physician's report, pursuant to section 229.10(2), and found C.J. was mentally ill and lacked sufficient judgment to make responsible decisions with respect to his hospitalization or treatment. Dr. Lindahl gave the opinion C.J. was likely to physically injure himself or others; inflict serious emotional injury on members of his family or others who lacked a reasonable opportunity to avoid contact with him; and was unable to satisfy his needs for nourishment, clothing, essential medical care, or shelter, if he was allowed to remain at liberty without treatment.

A commitment hearing was held on July 21, 2015. C.J. waived the presence of Dr. Lindahl and the applicants. He agreed the court could consider the request for the forty-eight-hour hold. The only witness at the hearing was C.J., who stated he just needed a CAT scan to find the wires implanted in him, because, "As far as mental, there wasn't nothing, you know, wrong with me mentally." He also stated, "I don't need any mental health treatment."

The district court entered an order finding C.J. was seriously mentally impaired. The court found C.J. was afflicted with a mental illness and lacked sufficient judgment to make responsible decisions with respect to his treatment or

hospitalization. The court found if C.J. was allowed to remain at liberty he was likely to inflict serious injury on himself or others and was likely to inflict serious emotional injury on members of his family or others who lacked a reasonable opportunity to avoid contact with him. The court gave the following factual basis for its ruling:

> Dr. report mental illness; believes wire placed by 2 females with connections to law enforcement & wanted to press charges against and got CAT scan to prove illegal wiretap. Allows FBI to track & speak with him. He says he has cooperated with whoever is speaking with him. Prior medical care with Dr. Brink until retirement; treatment in Mississippi. Aggressive behavior towards police officers (ER-Doctor) & C. Strand application immediate danger.

The court ordered C.J. should be immediately hospitalized for treatment. He appeals the decision of the district court.

## II.     Standard of Review

Challenges to the sufficiency of the evidence in involuntary commitment proceedings are reviewed for the correction of errors at law. *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). An allegation of serious mental impairment must be proven by clear and convincing evidence. Iowa Code § 229.13(1). "Clear and convincing evidence is less burdensome than evidence establishing proof beyond a reasonable doubt, but more burdensome than a preponderance of the evidence." *B.B.*, 826 N.W.2d at 428. "It means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.*

While the elements of serious mental impairment must be established by clear and convincing evidence, the district court's factual findings are binding on

appeal if they are supported by substantial evidence. *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *Id.*

### III.    Merits

Iowa Code section 229.1(20) (Supp. 2015) defines "seriously mentally impaired" in the following way:

> "*Seriously mentally impaired*" or "*serious mental impairment*" describes the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
> *a.* Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
> *b.* Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
> *c.* Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

The definition of serious mental impairment has three elements. The respondent must be found to have (1) a mental illness, (2) to lack "sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment," and (3) to be likely, if allowed to remain at liberty, to inflict physical injury on "the person's self or others," to inflict serious emotional injury on those close to the person, or to be unable to satisfy the person's physical needs. *J.P.*, 574 N.W.2d at 343 (quoting *In re Foster*, 426 N.W.2d 374, 376–77 (Iowa 1988)).

**A.**    C.J. claims the evidence does not show he was likely to physically injure himself or others if allowed to remain at liberty without treatment. He

claims there is no evidence of a recent overt act, attempt, or threat to support a finding of dangerousness.

We have said the element of dangerousness "requires a predictive judgment, 'based on prior manifestations but nevertheless ultimately grounded on future rather than past danger.'" *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986) (citations omitted). The term "likely" means "probable or reasonably to be expected." *Id.* The danger the person poses to himself or others must be evidenced by a "recent overt act, attempt or threat." *J.P.*, 574 N.W.2d at 344. "In the context of civil commitment we hold that an 'overt act' connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury." *Foster*, 426 N.W.2d at 378 (citation omitted).

The only evidence of a recent overt act is the request by Dr. Paugh for a forty-eight-hour hold, stating C.J. had been exhibiting aggressive behavior toward police officers. There is no evidence in the record as to whether this was verbal or physical aggression. The record does not show a threat or an act of unprovoked physical aggression. *See id.* at 378–79. We conclude the evidence does not show a recent overt act by C.J. "manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury." *See id.* at 378. Strand's statement C.J.'s "delusions impact his decision-making resulting in him being in imminent danger to self & possibly others," did not include evidence of a recent overt act "likely to result in physical injury." *See id.*

Due to the lack of evidence of a recent overt act, we conclude there is not clear and convincing evidence in the record to show C.J. was likely to injure

himself or others if allowed to remain at liberty without treatment. *See* Iowa Code § 229.1(20)(a).

**B.**      C.J. also claims there is not sufficient evidence in the record to show he was likely to inflict serious emotional injury on members of his family or others who lacked a reasonable opportunity to avoid contact with him if he was allowed to remain at liberty without treatment. *See* Iowa Code § 229.1(20)(b).

The district court found this ground had been proven by clear and convincing evidence, but did not cite any specific evidence to support its conclusion. On our review of the record we find there is no evidence to support the court's finding on this ground.

We reverse the district court's order finding C.J. was seriously mentally impaired and remand for dismissal of the application.

**REVERSED AND REMANDED.**